**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 1:17-cv-21728-JJO

ALEXANDER NOLASCO,

      Plaintiff,

v.

A K S CARTAGE CORP., a Florida for
profit corporation, JEMARY JORGE, an
individual, BARBARA VERONA, an
individual, D L I TRANSPORT CORP., a
Florida for profit corporation, ALEJANDO
ARRIETA, an individual, and DELTA LINE
INTERNATIONAL, INC., a Florida for
profit corporation, and ANA M. VEGA, an
individual,

      Defendants.

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, AKS CARTAGE CORP., JEMARY JORGE, BARBARA VERONA, DLI

TRANSPORT CORP., ALEJANDRO ARIETTA, DELTA LINE INTERNATIONAL, INC., and

ANA M. VEGA, by and through undersigned counsel, pursuant to Rule 56, hereby move for

summary judgment, and state the following in support thereof;

## STATEMENT OF MATERIAL UNDISPUTED FACTS

Pursuant to S.D. Fla. L.R. 56.1(a), Defendants are simultaneously herewith filing a separate

Statement of Material Facts in Support of Summary Judgment. This motion will refer to the

Defendant's Statement of Material Facts in Support of Summary Judgment by the abbreviation

"SOMF," which will then be followed by paragraph numbers within the SOMF that relate to the

facts being referenced. Attached to the SOMF are exhibits containing the relevant deposition

testimony that support the facts within the SOMF.

## SUMMARY OF ARGUMENT

Defendants move for summary judgment on two grounds. First, neither Defendants Jorge, nor Verona, were Plaintiff's employers, and, therefore, they are entitled to judgment in their favor in the instant action.

Second, because Plaintifff is expempt under the Motor Carrier Exemption, the Court lacks subject matter jurisdiction over his claim. Subject matter jurisdiction is an issue that can be raised at any time.

## MEMORANDUM OF LAW

### I: STANDARD OF LAW

To be granted summary judgment the moving party must show that there is an absence of material fact, allowing the action to be decided solely as a matter of law. "'Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain.' Reich v. John Alden Life Ins. Co., 126 F.3d 1 (1st Cir. 1997)." *Lara v. G&E Fla. Contractors, Ltd. Liab. Co.*, No. 15-20306-CIV, 2015 U.S. Dist. LEXIS 190560, at *5 (S.D. Fla. Dec. 9, 2015) (O'Sullivan, J.). The moving party demonstrates entitlement to summary judgment through references to the record. These references support the motion with facts that are not disputed, these undisputed facts must leave the Court with a decision that can be made solely as a matter of law.

> "That is, "[t]he moving party bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323) (internal quotation marks omitted)."

*Perez v. Garcia*, No. 15-20615-CIV, 2015 U.S. Dist. LEXIS 113148, at *38 (S.D. Fla. July 14, 2015) (O'Sullivan, J.)

2

All evidence, and inferences arising from evidence, must be viewed in the light most favorable to the non-moving party. However, if Plaintiff responds by conjecture, conclusory allegations, and assertions, the Plaintiff has not shown a material issue of fact precluding summary judgment. Conjectures, allegations, and assertions are not entitled to be viewed in the light most favorable to the non-moving party.

> Despite these presumptions in favor of the non-moving party, the Court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the Court occasioned by an unnecessary trial. Celotex, 477 U.S. at 322-23. Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures. Id.

*Avila v. CWC Transp., LLC*, No. 17-60041-CIV, 2018 U.S. Dist. LEXIS 12601, at *11 (S.D. Fla. Jan. 26, 2018) (O'Sullivan, J.).

Finally, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." See, *Baca v. Fla. Roofing Solutions, Inc.*, 2013 U.S. Dist. LEXIS 38563 (S.D. Fla. Mar. 20, 2013) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Carson v. J Curt Inc.*, 1:06-CV-00098-MP-AK, 2007 U.S. Dist. LEXIS 11903, 2007 WL 601925, at *2 (N.D. Fla. Feb. 21, 2007) (finding that, where the defendant has produced time records, plaintiff could not rely only on his own uncorroborated testimony to defeat a motion for summary judgment).

It is insufficient for Plaintiff to show that there is some evidence in its favor. Defendants must prevail on summary judgement, unless the Plaintiff shows that there are sufficient facts upon which a jury could find in its favor,

> "Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient. There must be evidence on which the jury could reasonably find for the non-movant.

> Anderson, 477 U.S. at 251; Matsushita Elec. Indus. Co. v. Zenith
> Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d
> 538 (1986)."

*Lara v. G&E Fla. Contractors, Ltd. Liab. Co.*, No. 15-20306-CIV, 2015 U.S. Dist. LEXIS 190560,

at *6 (S.D. Fla. Dec. 9, 2015)(O'Sullivan, J.).

## II: ARGUMENT

### A: Defendants Barbara Verona and Jemary Jorge were Not Plaintiff's Employers and Should be Granted Summary Judgment in This Action

There is no legally cognizable reason why Defendant Verona is named in this action. In fact, Ms. Verona did not work for any of the Defendants during the time that Plaintiff did. (SOMF ¶ 8). Ms. Verona was named solely because her name came up on Sunbiz when a search for AKS was performed before the lawsuit was filed. (SOMF ¶ 9). When Plaintiff was employed, Ms. Verona had no control over Defendants, or matters related to employees in Plaintiff's position, and she still lacks said control. (SOMF ¶ 8, 9, 10, 11 & 12). Ms. Verona has no ownership interest in the entity Defendants. (SOMF ¶ 10). Holding a corporate title on the internet, after Plaintiff's employment ended, is not a sufficient ground upon which to name Ms. Verona in the action. Being a corporate officer of a company, alone, is not enough to confer employer status.

> "Being a corporate officer is insufficient to confer employer status
> under the FLSA. Alvarez Perez v. Sanford-Orlando Kennel Club,
> Inc., 515 F.3d 1150, 1160 (11th Cir. 2008) (citing Patel v. Wargo,
> 803 F.2d 632, 637-38 (11th Cir.1986)). "[I]n order to qualify as an
> employer for this purpose, an officer 'must either be involved in the
> day-to-day operation or have some direct responsibility for the
> supervision of the employee.'" Id. (quoting Patel, 803 F.2d at 638)."

*Lara*, 2015 U.S. Dist. LEXIS 190560, at *12 (O'Sullivan, J.)

> "Therefore, a supervisor's title does not in itself establish or preclude
> his or her liability under the FLSA, and the district court was correct
> in refusing to instruct the jury to the contrary."

*Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1310 (11th Cir. 2013).

Ms. Verona could not have controlled Defendants' operation, had day-to-day operational control, managed/supervised the Plaintiff, nor affected Defendants' compliance with the FLSA, while Plaintiff was employed, because Ms. Verona did not work for Defendants until March 2017, and Plaintiff ended his employment in 2016. (SOMF ¶ 8). There is no cognizable legal argument for not dismissing the allegations against Ms. Verona.

Defendant Jorge, also, did not work for any of the entities sued by the Defendant until March of 2017, and, hence, could not have had operational control, supervisory/management duties, control over the day-to-day operations of defendants, direct responsibility for the Plaintiff, nor did she control the Entity Defendant's FLSA compliance. (SOMF ¶1). Furthermore, the only record evidence is that there was no employment relationship between Ms. Jorge and Plaintiff, Ms. Jorge had absolutely no control over Plaintiff's hours, compensation, or anything related to his employment, and, therefore, had no role in the Entity Defendants' FLSA compliance. (SOMF ¶1, 2, 3, 4, 5, 6, & 7).

> "However, **to support individual liability, there must be control over "significant aspects of [the company's] day-to-day functions, including compensation of employees** or other matters in relation to an employee." Alvarez Perez, 515 F.3d at 1160 (quoting Wargo, 803 F.2d at 638). **In other words, while control need not be continuous, it must be both substantial and related to the company's FLSA obligations."**

*Lamonica 711 F.3d* at 1314. (Emphasis Added)

Because Defendant Verona was not a part of any entity defendant during the Plaintiff's employment, it is a legal certainty that claims against her should be dismissed. Plaintiff will, doubtlessly, argue that Defendant Jorge did the bookkeeping for a company, who is not a named defendant, but who lent her bookkeeping talents to AKS prior to March 2017. However, bookkeeping duties are not enough to support Ms. Jorge being defined as an employer. This is

especially true as there is no allegation of joint employer status between Defendants and the entity Ms. Jorge worked for. Ms. Jorge did not have control over how Plaintiff was compensated, the hours Plaintiff worked, other matters in relation to the Plaintiff, the Entity Defendants' FLSA compliance, nor did she take any role in the management or supervision of Plaintiff. (SOMF ¶1, 2, 3, 4, 5, 6, & 7). Therefore, Ms. Jorge was not Plaintiff's employer as that term is defined by the FLSA.

> "While that may be the case, the law in the Eleventh Circuit is that "[a] corporate officer is personally liable as an FLSA employer if he has **'operational control of a corporation's covered enterprise,'' which may be involvement in the day-to-day operation of the company** or direct supervision of the employee at issue." Moore v. Appliance Direct, Inc., 708 F.3d 1233, 1237 (11th Cir. 2013) (quoting Patel, 803 F.2d at 637-38 (emphasis added)). The test is disjunctive and the evidence cited by the plaintiffs shows Mr. Hersman had involvement in the day-to-day operation of G&E."

*Lara,* 2015 U.S. Dist. LEXIS 190560, at *15-16. (O'Sullivan, J.).

Neither Defendant Jorge, nor Verona, worked for the Entity Defendants at the same time as the Plaintiff did, hence, common sense dictates they did not have "involvement in the day-to-day operation of the company." Beyond common sense, the record clearly establishes a lack of any relation between Plaintiff's employment, and Ms. Jorge, or Verona. (SOMF ¶1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 & 12).

> "To determine whether a corporate officer is an "employer," courts look to whether the officer was involved in the compensation of employees, the hiring or firing of employees, or other matters "in relation to an employee." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008)."

*Moreno v. Palmetto prtg., Inc.*, No. 16-23379-Civ, 2017 U.S. Dist. LEXIS 88557, at *6 (S.D. Fla. June 9, 2017) (Cooke, J.).

If Plaintiff puts forth the misguided argument that Defendant Jemary Jorge had the ability to exercise authority over any factors related to Plaintiff, as a bookkeeper for a company not alleged to have employed Plaintiff, unexercised authority does not establish employer status. Hence, Plaintiff would need to show exercised authority, which there is no evidence of.

> "Although Collins, Sr. remained the designated managing agent under the agreement between Kennel Club and CCC Racing even after his heart attack in 1998, and he could have played a greater role in the day-to-day operations of the Longwood facility if he had desired, *Patel* instructs that unexercised authority is insufficient to establish liability as an employer. *See Patel,* 803 F.2d at 638; *see also Wirtz,* 322 F.2d at 262."

*Alvarez Perez,* 515 F.3d at1161.

There is no precedent holding an officer/director individually liable for an alleged FLSA violation, when that officer/director was not a part of the company at the time of the alleged violation. However, if there were any basis in law to hold an officer/director liable for an alleged FLSA violation that occurred before they joined an entity defendant, the record evidence is beyond controversy that Ms. Jorge, and Ms. Verona, met none of the criterion necessary to be defined as an employer. (SOMF ¶ 2, 3, 4, 5, 6, 7, 9, 10, 11, & 12)

**B: Although Defendants Were Denied the Opportunity to Amend the Answer to Include the Motor Carrier Exemption, It is Appropriately Considered on Summary Judgment**

The jurisdictions of the Department of Labor, and the Department of Transportation, over matters relating to wages and hours of employees, are mutually exclusive. Hence, there is no FLSA jurisdiction over employees over whom the Secretary of Transportation has the jurisdiction to set wage and hour requirements for. Keeping the jurisdictions of the Department of Labor, and the Secretary of Transportation, separate, is the function of the Motor Carrier Exemption.

> "The Department of Labor's jurisdiction under the FLSA and the Department of Transportation's jurisdiction under the Motor Carrier Act are mutually exclusive and there is no overlapping jurisdiction."

> *Morrison v. Quality Transports Servs., Inc.*, 474 F. Supp. 2d 1303,
> 1309 n. 2 (S.D. Fla. 2007) (citing *Morris v. McComb*, 332 U.S. 422,
> 437-38, 68 S.Ct. 131, 92 L.Ed. 44 (1947)). And it is immaterial
> whether the Secretary of Transportation actually exercises his or her
> power to regulate under the Motor Carrier Act; the Motor Carrier
> Exemption to the FLSA applies so long as the Secretary has the
> authority to regulate over the particular employee. *Id.* (citing *Spires
> v. Ben Hill County*, 980 F.2d 683, 686 (11th Cir.1993))."

*Narbona v. Gold Coast Bev. Distribs., Inc.*, No. 1:13-cv-24148-UU, 2014 U.S. Dist. LEXIS
188827, at *11-12 n.5 (S.D. Fla. July 14, 2014)

The purpose of the Motor Carrier Exemption, as the *Narbona* Court cites to the holdings
of the Supreme Court to establish, is to create clear jurisdictional boundaries for the FLSA. While
Defendants were not permitted to amend the pleadings in this case to include the affirmative
defense of the Motor Carrier Exemption, the Defendants did not waive the argument. If exempt,
Plaintiff may not claim the protections of the FLSA, the exemption is an issue of the Court's
subject matter jurisdiction. The ability to argue subject matter jurisdiction, at any point, cannot be
waived.

> "It is well-established that "[s]ubject-matter jurisdiction can never
> be waived . . . ." *Latin Am. Prop. & Cas. Ins. Co. v. Hi-Lift Marina,
> Inc.*, 887 F.2d 1477, 1479 (11th Cir. 1989)."

*Reyes v. Aqua Life Corp.*, No. 10-23548-Civ, 2012 U.S. Dist. LEXIS 81626, at *2 (S.D. Fla.
June 13, 2012)

A challenge to the Court's subject matter jurisdiction may be raised at any time, including
on appeal, even if raised for the first time on appeal. If neither party addresses subject matter
jurisdiction, it is the obligation of a district, and/or appellate, court to ensure that subject matter
jurisdiction exists at every stage of the litigation.

> "Neither party to the appeal has questioned the jurisdiction of the
> District Court, but "it is the duty of this court to see to it that the
> jurisdiction of the [district court], which is defined and limited by

statute, is not exceeded." *Louisville & Nashville R. Co.* v. *Mottley*,
211 U.S. 149, 152 (1908)."

*Kenosha v. Bruno*, 412 U.S. 507, 511, 93 S. Ct. 2222, 2225-26 (1973).

"This court can conduct plenary review of subject matter
jurisdiction *sua sponte. Fitzgerald v. Seaboard System R.R., Inc.,*
760 F.2d 1249, 1251 (11th Cir.1985). Indeed, this court has the
obligation to inquire into subject matter jurisdiction whenever it
may be lacking. *Id.* (citing *Philbrook v. Glodgett,* 421 U.S. 707, 95
S. Ct. 1893, 44 L. Ed. 2d 525 (1975); *City of Kenosha, Wis. v. Bruno,*
412 U.S. 507, 511, 93 S. Ct. 2222, 2225, 37 L. Ed. 2d 109 (1973)).
*See* Fed.R.Civ.P. 12(h)(3)."

*Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1468-69 (11th Cir. 1997).

Whether, or not, the proper procedure for bringing subject matter jurisdiction before the

Court, at the pleading stage, was followed, the Court's subject matter jurisdiction cannot be

established be procedurally defaulted or waived.

"A jurisdictional defect is one that "strips the court of its power to
act and makes its judgment void." Escareno v. Carl Nolte Sohne
GmbH & Co., 77 F.3d 407, 412 (11th Cir. 1996). Because parties
cannot by acquiescence or agreement confer jurisdiction on a federal
court, a jurisdictional defect cannot be waived or procedurally
defaulted -- instead, a judgment tainted by a jurisdictional defect
must be reversed. See Harris, 149 F.3d at 1308-09; see also United
States v. Griffin, 303 U.S. 226, 229, 82 L. Ed. 764, 58 S. Ct. 601
(1938)."

*McCoy v. United States*, 266 F.3d 1245, 1249 (11th Cir. 2001)

Moreover, an unpled affirmative defense is permitted to be used later in the proceedings,

if the Plaintiff was on notice that the defense would be at issue. An unpled affirmative defense is

only properly excluded when the Plaintiff is prejudiced because there was no warning that the

defense would be argued. In this case there were many un-ambiguous warnings, and discovery

conducted by both parties addressed the exemption.

**We have recognized, however, that a defendant does not waive
an affirmative defense if the earlier omission from responsive**

pleadings does not prejudice the plaintiff. *See Proctor v. Fluor Enters., Inc.*, **494 F.3d 1337, 1350 (11th Cir. 2007)** (acknowledging that, in cases where federal case law has identified specific affirmative defenses, we have "examined whether a plaintiff had notice of the unpled defense or was prejudiced by the lack of notice" in determining whether the defendant waived the defense); *Sweet v. Sec'y, Dep't of Corrections*, 467 F.3d 1311, 1321 n.4 (11th Cir. 2006) ("[O]ur cases interpreting [Rule 8(c)] . . . support a liberal approach to waiver where the failure to raise an affirmative defense has not prejudiced the plaintiff."); *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988) ("[W]hen the failure to raise an affirmative defense does not prejudice the plaintiff, it is not error for the trial court to hear evidence on the issue."); *Jones v. Miles*, 656 F.2d 103, 107 n.7 (5th Cir. Unit B Aug. 1981) (**"Neglect to affirmatively plead [an affirmative defense] is simply noncompliance with a technicality and does not constitute a waiver where there is no claim of surprise."**)….

"…We have also concluded that an omission of an affirmative defense in responsive pleadings does not prejudice a plaintiff when the defendant first raises the defense in a pretrial motion or discussion and the subject matter of discovery suggests that the defendant will rely on the defense. *See Sweet*, 467 F.3d at 1321 n.4 (noting that "it is settled that **a plaintiff is not prejudiced by a defendant's failure to comply with Rule 8(c) if the plaintiff is provided notice of the affirmative defense by some other means,"** such as the defendant's motion for summary judgment); *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077 (11th Cir. 2003) (holding that the district court did not err in permitting evidence of the Equal Pay Act affirmative defenses when, though not raised in responsive pleadings, the affirmative defenses had been raised in pretrial conference); *Grant v. Preferred Res., Inc.*, 885 F.2d 795, 797-98 (11th Cir. 1989) (determining that, though the defendant did not raise a statute-of-limitations defense in its responsive pleadings, it raised the defense in a motion for summary judgment filed one month before trial and thereby put plaintiff on notice that the defendant would rely on the defense); *Hassan*, 842 F.2d at 262-64 (holding that the district court did not err by considering a defendant's affirmative defense at trial when, though the defendant did not plead the affirmative defense, the defendant questioned the plaintiff extensively regarding the subject matter of the defense in a deposition and an interrogatory, thus giving notice that the defendant "planned to raise the issue")."

*Edwards v. Fulton County*, 509 Fed. Appx. 882, 887-888 (11th Cir. 2013) (Emphasis Added).

First, in Docket Entry 39, Defendants' Motion to Amend the Answer and Affirmative Defenses to Third Amended Complaint and Demand for Jury Trial Docket Entry 33, Undersigned, filed a motion to amend under Rule 15, rather than Rule 16. Arguing that a deviation in the scheduling order should be granted to modify the defenses, was not the purpose of the motion, even though the Rule 16 standard was technically the proper basis for a motion to amend after the deadline. The purpose of the motion was to make an appellate record of the argument that exemptions challenge jurisdiction, and jurisdiction can be argued at any time, with, or without, amendment of the pleadings. The argument in the motion clearly states that the Motor Carrier Exemption will be an issue in summary judgment, and if necessary at trial, whether or not the pleading is amended, hence the Plaintiff had notice.

The Motion to Amend was clearly establishing an appellate record, it is written as an argument that has little to do with amending pleadings, and everything to do with being able to argue an exemption at any point in the litigation. When the Plaintiff read the motion setting up the issue for appeal, it was the most un-ambiguous notice possible, that the Motor Carrier exemption would be an issue in the future.

Second, discovery heavily emphasized the Motor Carrier Exemption, with both sides, at length, asking questions of deponents to establish whether Mr. Nolasco was an exempt employee. Plaintiff asked questions designed to elicit testimony Plaintiff could use on summary judgement, on the Motor Carrier Exemption, so clearly Plaintiff is not surprised, nor prejudiced, by the argument being made now.

Third, undersigned announced his intentions to file a summary judgment motion on the Motor Carrier Exemption, during a telephonic status conference on December 13, 2017. The Plaintiff will suffer no prejudice from the issue being raised now, as he was aware it would be

raised from the beginning of the case, appropriately asked about it in discovery, and then got additional notice in open court.

It was argued in the Defendants Motion to Amend, and it should be noted now, the issue affecting the merits of the case the most, is whether the FLSA even applied to Plaintiff. Technicalities involving pleadings and scheduling orders should not be determinative of actions, the merits should determine the outcomes of actions. Even if the Motor Carrier Exemption did not determine jurisdiction, it is not too late to argue the issue now, as it is essential to a merit-based determination of the action. Merit-based resolution of actions is the paramount goal of the judicial system.

> It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. " The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley* v. *Gibson*, 355 U.S. 41, 48. The Rules themselves provide that they are to be construed "to secure the just, speedy, and inexpensive determination of every action." Rule 1.

*Foman v. Davis*, 371 U.S. 178, 181-182 (U.S. Dec. 3, 1962).

### C: Plaintiff is Exempt From The FLSA Under the Motor Carrier Exemption

> "The FLSA requires employers to pay employees at time-and-a-half for any time worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a)(1). However, the act specifically exempts from this requirement "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of" the MCA. *Id*. § 213(b)(1)."

*Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1226 (11th Cir. 2009)

The Plaintiff is exempt from coverage under the FLSA because he was a driver, who transported articles moving through interstate commerce, affected the safety of vehicles traveling

on highways, and worked for entities that are common carriers, conducting significant interstate business. (SOMF ¶13, 14, 15, 16, 17, 18 & 19).

> "This Court has interpreted the MCA's above statutory scheme. Walters, 575 F.3d at 1226-27. We have said that the MCA confers upon the Secretary of Transportation the authority "'to regulate the maximum hours of service of employees who are employed (1) by a common carrier by motor vehicle; (2) engaged in interstate commerce; and (3) whose activities directly affect the safety of operations of such motor vehicles.'" Id."

*Abel v. S. Shuttle Servs.*, 631 F.3d 1210, 1213 (11th Cir. 2011).

Although Plaintiff will argue that most of his trips were local in nature, the articles moved by the Plaintiff, when he drove them to the airport or seaport, were on a journey of interstate commerce that Plaintiff was a part of, and this interstate transport was a significant aspect of the Defendants' business. (SOMF ¶ 13 & 14). Furthering the journey of articles through interstate commerce, is enough to categorize Plaintiff as an exempt employee under the Motor Carrier Act, even if he never drove across state lines.

> "However, in addressing the second requirement (whether the Secretary's jurisdiction extends to the employee's specific work-related activities), the Walters Court considered whether driving intrastate airport-to-seaport routes "constituted interstate commerce." Id. This Court concluded that "purely intrastate transportation can constitute part of interstate commerce if it is part of a 'continuous stream of interstate travel.' For this to be the case, there must be a 'practical continuity of movement' between the intrastate segment and the overall interstate flow." Id. at 1229 (citations omitted) (quoting, inter alia, Walling v. Jacksonville Paper Co., 317 U.S. 564, 568, 63 S. Ct. 332, 335, 87 L. Ed. 460 (1943))."

*Abel*, 631 F.3d at 1214; *See also, Opelika Royal Crown Bottling Co. v. Goldberg, 299 F.2d 37 (5th Cir. 1962); & Baez v. Wells Fargo Armored Serv. Corp., 938 F.2d 180 (11th Cir. 1991).*

Plaintiff may argue that he was never actually subject to the jurisdiction of the Secretary of the Department of Transportation, however, the Secretary does not need to exercise his/her jurisdiction, for the jurisdiction to exist, and for the exemption to apply.

> "Because of this congressional intent, the Secretary of Transportation does not have to exercise the authority granted to him by the MCA for the motor carrier exemption to be applicable; instead, his power to regulate under the act merely needs to cover a particular group of employees. *See id*."

*Walters*, 575 F.3d at 1226. *See also, Baez*, 938 F.2d 180.

Hence, the outcome determinative question is whether the Secretary of Transportation had the power to regulate the Plaintiff's work for Defendants. The answer involves a two-part test. First, Plaintiff must have worked for a business subject to the Jurisdiction of the Secretary of Transportation. Second, the work Plaintiff performed must directly affect the safety of motor vehicles while they transported articles through interstate commerce.

> There are two requirements for an employee to be subject to the motor carrier exemption. First, his employer's business must be subject to the Secretary of Transportation's jurisdiction under the MCA. *See Baez v. Wells Fargo Armored Serv. Corp*., 938 F.2d 180, 181--82 (11th Cir. 1991) (per curiam); *id*. Second, the employee's business-related activities must "directly affect[] the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Baez*, 938 F.2d at 182; *see also* 29 C.F.R. § 782.2(a).

*Walters*, 575 F.3d 1221, 1227

Defendant AKS is a motor carrier with DOT, and Motor Carrier, Numbers. (SOMF ¶ 17). Defendant DLI's trucks are registered with the Department of Transportation, hence, DLI has a DOT Number. (SOMF ¶ 16). Holding these authorizations from the Secretary of Transportation is enough that both DLI, and AKS, are considered motor carriers for the purposes of the exemption. *See, Id;* & *Baez*, 938 F.2d 180.

Plaintiff may point out that Defendant DELTA LINE INTERNATIONAL is a non-vessel operator cargo carrier. There could be a debate over whether non-vessel operator cargo carriers fall under the Motor Carrier Act. However, this debate is not necessary, the Plaintiff alleges that all three companies were his joint employer, hence, the fact that AKS and DLI have DOT Numbers is sufficient for the exemption.

The exemption is properly applied to all employers, when joint employer status is alleged, as it is here. This is because the exemption depends on the nature of the work of the Plaintiff, not each Defendant being a motor carrier. The power of the Secretary of Transportation to set hours and pay requirements for an employee, can be exercised through the Secretary's power over only one employer, hence, the fact that the one employer is a motor carrier, subjects the employee in question to the Secretary's jurisdiction. The Secretary has the power to regulate the employment of Plaintiff because DLI and AKS fall under the jurisdiction of the Secretary. Whether DELTA LINE is regulated by the Secretary is irrelevant, because the exemption is based off of whether the Secretary has jurisdiction over an employee, which the Secretary had because the Plaintiff was employed by two entities the Secretary could exercise jurisdiction through.

> "At pages thirteen and fourteen of their response, Plaintiffs assert that Defendant Carey International is not itself a motor carrier, arguing that this fact necessarily precludes entering summary judgment in Defendant's favor. This argument misapprehends the nature of the motor carrier exemption. By separate order, the Court has concluded that Carey International stands in relation to Plaintiffs as a joint employer under FLSA. Section 213(b)(1), however, provides that the overtime provisions of § 207 do not govern the employment of individuals "with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service." The operative question, therefore, is whether Plaintiffs are such individuals and not, as Plaintiffs imply, whether Carey International is itself a motor carrier."

*Garcia v. Carey Int'l, Inc.*, No. 0421074-CIV-UNGARO-BENAGES, 2004 U.S. Dist. LEXIS 30346, at *9 n.2 (S.D. Fla. Dec. 9, 2004). *See also*, *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 472-73 (5th Cir. 2010); *Alexander v. Tutle & Tutle Trucking, Inc.*, 834 F.3d 866, 870 (8th Cir. 2016); *Velez v. New Haven Bus Serv.*, No. 3:13cv19 (JBA), 2015 U.S. Dist. LEXIS 1275, at *24 (D. Conn. Jan. 6, 2015); *Lucas v. Noypi, Inc.*, No. H-11-1940, 2012 U.S. Dist. LEXIS 143889, at *16-17 (S.D. Tex. Oct. 3, 2012); *Mendoza v. Hohoho Express, Inc.*, No. H-13-0317, 2014 U.S. Dist. LEXIS 64846, at *6-7 n.2 (S.D. Tex. May 12, 2014); & *Tidd v. Adecco USA, Inc.*, No. 07-11214-GAO, 2010 U.S. Dist. LEXIS 24785, at *6-7 (D. Mass. Mar. 16, 2010).

The final criterion that must be met for Plaintiff to be exempt is that the Plaintiff's activities directly affected the safety of articles transported through interstate commerce, on the highways of the United States. This is easily established because Plaintiff testifies he spent 50% of his time driving, and that he drove articles originating from, and destined for, various foreign countries and states. (SOMF ¶13, & 14).

Drivers are exempt as a matter of black letter law, and well-established precedent, because driving intrinsically affects highway safety.

> **"The regulations explain that the motor carrier exemption "is applicable under decisions of the U.S. Supreme Court, to those employees and those only whose work involves engagement in activities consisting wholly or in part of a class of work which is defined: (i) As that of a driver**, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a), (b)(2) (citing *Pyramid Motor Freight Corp. v. Ispass,* 330 U.S. 695, 67 S. Ct. 954, 91 L. Ed. 1184 (1947); *Levinson v. Spector Motor Serv.,* 330 U.S. 649, 67 S. Ct. 931, 91 L. Ed. 1158 (1947); *Morris v. McComb,* 332 U.S. 422, 68 S. Ct. 131, 92 L. Ed. 44 (1947))."

*Williams v. R.W. Cannon, Inc.*, No. 08-60168-CIV, 2008 U.S. Dist. LEXIS 67490, at *29-30 (S.D. Fla. Sep. 4, 2008) (Emphasis Added).

The way in which the Plaintiff operated the vehicle he was driving, had a profound impact on the safety of the vehicle he used to transport articles through interstate commerce, even if he was only a part-time driver. Plaintiff is exempt, because even if Plaintiff's duties were only those of a partial-duty driver, a partial-duty driver is exempt from coverage under the FLSA.

> The applicable regulations explain that [t]he work of an employee who is a full-duty or partial duty 'driver,' . . . directly affects 'safety and operation' . . . whenever he drives a motor vehicle in interstate or foreign commerce within the meaning of [the Motor Carrier Act]." 29 C.F.R. § 782.3(b).

*Walters v. Am. Coach Lines of Miami, Inc.*, 569 F. Supp. 2d 1270, 1286 n.12 (S.D. Fla. 2008)

> Section 728.3(b) clarifies the second factor for present purposes, explaining that "[t]he work of an employee who is a full-duty or partial-duty 'driver,' …, directly affects 'safety of operation' … whenever he drives a motor vehicle in interstate or foreign commerce

*Garcia v. Carey Int'l, Inc.*, No. 0421074-CIV-UNGARO-BENAGES, 2004 U.S. Dist. LEXIS 30346, at *8 (S.D. Fla. Dec. 9, 2004)

## **CONCLUSION**

Defendants are entitled to summary judgment because Plaintiff is exempt from the protections of the FLSA, which means this Court lacks subject matter jurisdiction to proceed with the action. Although the Defendants were denied the opportunity to amend the Answer to include the Motor Carrier Exemption, it is never too late to argue subject matter jurisdiction. Hence, as will be argued if a trial is necessary, because Plaintiff is exempt, he has no recoverable claim under the FLSA. Since Plaintiff has no right to recovery under the FLSA, summary judgment should be granted in favor of Defendants.

If the Court is not inclined to grant summary judgment on the exemption, neither Defendants Jorge, nor Verona, were Plaintiff's employers. Neither, Defendant Jorge, nor Defendant Verona, even worked for the Entity Defendants during Plaintiff's employment. Therefore, Defendants Verona, and Jorge, must be dismissed from the instant action.

Respectfully submitted, this 15th day of February, 2018.

LUBELL & ROSEN, LLC
*Attorneys for Defendants*
200 S. Andrews Ave, Suite 900
Ft. Lauderdale, Florida 33301
Phone: (954) 880-9500
Fax: (954) 755-2993
E-mail:     jhs@lubellrosen.com

By: */s/ Joshua H. Sheskin*
    Joshua H. Sheskin, Esquire
    Florida Bar No. 93028

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 15, 2018, I electronically filed the foregoing document with the clerk of the court using CM/ECF.  I also certify that the foregoing document is being served this day to all persons on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/Joshua H. Sheskin*
Joshua H. Sheskin, Esquire
Florida Bar No. 93028

## SERVICE LIST

*Alexander Nolasco v. A K S Cartage Corp., et al*
S.D. Fla. Case No. 1:17-cv-21728-JJO

| | |
|---|---|
| Brian Christopher Costa | Adi Amit, Esquire |
| Alvarez, Carbonell, Cooke, | Joshua H. Sheskin, Esquire |
| Feltman & Da Silva PL | LUBELL & ROSEN, LLC |
| 75 Valencia Avenue | 200 S. Andrews Avenue |

8th Floor
Coral Gables, Florida 33145
bcosta@Acfdlaw.com
*Counsel for Plaintiff*

Robert F. Cooke
The Cooke Law Group
10720 Caribbean BLVD
Ste 540
Cutler Bay, FL 33189
litigations@rfc-law.com
*Counsel for Plaintiff*

Javier Alejandro Basnuevo Valdivia
Gamba, Lombana, Herrera
2701 Ponce de Leon Blvd.
Mezzanine
Coral Gables, FL 33134
basnuevo@rdlawnet.com

Suite 900
Fort Lauderdale, Florida 33301
adi@lubellrosen.com
jhs@lubellrosen.com
*Counsel for Defendant*