UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-21728-CIV-O'SULLIVAN

[CONSENT]

ALEXANDER NOLASCO,

      Plaintiff,

v.

AKS CARTAGE CORP., a
Florida for profit corporation,
JEMARY JORGE, an individual,
BARBARA VERONA, an individual,
DLI TRANSPORT CORP., a Florida
for profit corporation, ALEJANDRO
ARRIETA, an individual, DELTA
LINE INTERNATIONAL, INC.,
a Florida for profit corporation and
ANA M. VEGA, an individual,

      Defendants.

_____/

## ORDER

THIS MATTER is before the Court on the Defendants' Motion for Summary

Judgment (DE# 74, 2/15/18).

## BACKGROUND

The operative complaint alleges a single cause of action for unpaid overtime

pursuant to the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 201, et seq.

(hereinafter "FLSA") against AKS Cartage Corp. (hereinafter "AKS"), Jemary Jorge,

Barbara Verona, DLI Transport Corp. (hereinafter "DLI"), Alejandro Arrieta, Delta Line

International, Inc. (hereinafter "Delta Line") and Ana M. Vega. See Third Amended

Compliant (DE# 27, 7/10/17).

On August 29, 2017, the defendants sought leave to amend their answer to assert the Motor Carrier Act (hereinafter "MCA") exemption after the deadline for amending the pleadings had passed. See Defendants' Motion to Amend the Answer and Affirmative Defenses to Third Amended Complaint and Demand for Jury Trial Docket Entry 33 (DE# 39 at 1, 8/29/17). The Court denied the defendants' motion stating:

> Here, Defendants have not established good cause to amend their answer. Defendants knew about Plaintiff's job duties from the Second and Third Amended Complaints. They also knew about his job duties by virtue of being his employer. See D.E. 39 ("Through the process of conferring with Defendants . . . Defense Counsel learned more about Plaintiff's specific job duties . . . ."). **Defense Counsel's failure to raise the Motor Carrier Exception until well after the amendment deadline, despite learning about Plaintiff's job duties from the complaints and from their clients, is not excusable**. Accordingly, it is hereby
>
> ORDERED AND ADJUDGED that Defendants' Motion to Amend the Answer and Affirmative Defenses to Third Amended Complaint and Demand for Jury Trial (D.E. 39) is DENIED.

Order (DE# 53 at 3, 10/12/17) (emphasis added).

The parties subsequently consented to magistrate judge jurisdiction. See Notice and Consent to Proceed Before a United States Magistrate Judge (DE# 60, 11/27/17). The undersigned issued a new scheduling order which did not set a new deadline for amending the pleadings. See Order Setting Pretrial Conference and Trial Date (DE# 66, 12/13/17).

On February 15, 2018, the defendants filed the instant motion for summary judgment and statement of undisputed facts. See Defendants' Motion for Summary Judgment (DE# 74, 2/15/18) (hereinafter "Motion"); Defendants' Statement of Material

2

Facts in Support of Summary Judgment (DE# 75, 2/15/18) (hereinafter "SOF"). The plaintiff filed his response in opposition on March 12, 2018. <u>See</u> Plaintiff's Response to Defendants' Motion for Summary Judgment and Memorandum of Law (DE# 79, 3/12/18) (hereinafter "Response"); Plaintiff's Statement of Disputed Facts in Support of His Response to Defendants' Motion for Summary Judgment (DE# 78, 3/12/18) (hereinafter "RSOF"). The defendants file their reply on March 19, 2018. <u>See</u> Defendants Reply to Plaintiff's Response to Defendants' Motion for Summary Judgement and Memorandum of Law (DE# 81, 3/19/18) (hereinafter "Reply"); Reply in Support of Defendants' Statement of Material Facts in Support of Summary Judgment and in Response to Plaintiff's Statement of Disputed Facts in Support of His Response to Defendants' Motion for Summary Jud[g]ement (DE# 82, 3/19/18) (hereinafter "Reply SOF").

This matter is ripe for adjudication.

## <u>FACTS</u>[1]

### A.    The Corporate Defendants

The defendants are in the business of "ship[ping] cargo and . . . send[ing] things to many places" including Latin America and Europe. <u>See</u> Deposition of Alexander Nolasco (DE# 78-2 at 4). When cargo arrives at the defendants' warehouse:

> [t]he person there, who is in charge of receiving, will take the cargo off the truck, will take off all the pallets, weigh them, measurements [sic] and put them in their place.

---

[1] Some of the exhibits filed by the parties bear multiple page numbers. To avoid confusion and for the sake of consistency, the Court will refer to the page numbers automatically assigned by the Court's CM/ECF system appearing on the top right-hand corner of each page when citing to those exhibits.

*** 

> The trucks come from interstate outside of Miami. They come with shipping instructions, packing lists that says [sic] where it comes from, for what client, how many pallets, how many boxes. The person that receives 50, 60 pallets unloads them, checks that it is the totality of the pallets, the totality of the boxes, and that is the paper that he signs previous to the departure of the truck.

Deposition of Ana M. Vega (DE# 75-5 at 4).

The defendants know where that cargo was headed. Meaning, the defendants do not store cargo in their warehouse indefinitely. See Deposition of Alexander Nolasco (DE# 78-2 at 4). The defendants' warehouse serves as a temporary holding facility until the cargo is ready to be shipped to a known location. The corporate defendants "do not hold cargo as stock for any of their clients." SOF at ¶ 15; see also Deposition of Ana M. Vega (DE# 75-5 at 5) (stating that defendants "don't carry an inventory for anybody. But sometimes they do divide the cargo.").

The warehouse where the defendants are located has five loading docks for large trucks. SOF at ¶ 19. Defendant DLI's trucks are registered with the Department of Transportation. SOF at ¶ 16. Defendant AKS conducts business across state lines. It has been issued DOT numbers under the authority of the Department of Transportation. Id. at ¶ 17. Defendant Delta Line is a non-vessel operator cargo carrier primarily engaged in the transportation of articles through interstate, and often international commerce. Id. at ¶ 18.

**B.    The Plaintiff**

The parties dispute what the plaintiff's primary functions were while he was employed by the defendants. The plaintiff states that he was a warehouse assistant

4

who looked for shipments and helped organize them. RSOF at ¶ 21. According to the plaintiff, his primary job functions were warehouse-related, clean[ing] the yard, load[ing] trucks under Alejandro Arrieta's supervision, maintain[ing] the warehouse racks, and receiv[ing] shipments to the warehouse. RSOF at ¶ 13. The plaintiff asserts that his "work was split up 50% in the warehouse, 50% 'on the street packing things **and doing deliveries**.' Therefore, he did not drive goods for 50% of his time." RSOF at ¶ 14 (emphasis added).[2] The defendants do not dispute that the plaintiff spent at least some of his time as a warehouse assistant, but maintain that the plaintiff's <u>primary</u> job functions included driving trucks and loading and unloading trucks, for the purpose of the distribution of articles throughout the United States, and to other countries. SOF at ¶ 13; Reply SOF at ¶¶ 13, 21. According to the defendants, the plaintiff spent at least 50% of his work hours driving goods in interstate commerce, which "included some loading and unloading time as all truck deliveries do." Reply SOF at ¶¶ 14, 21.

The plaintiff utilized three different vehicles to make deliveries for the

---

[2] During his deposition, the plaintiff testified as follows:

Q. Now in your mind, if you had to estimate the percentage of time that you did one, what did you do more? Did you drive the trucks more or did you load the trucks more?

A. Look, **you could say 50/50. 50 percent each you could be on the street packing up things and doing deliveries 50 percent of the time and the other 50 percent of the time you could be working at the warehouse**.

Deposition of Alexander Nolasco (DE# 78-2 at 6-7) (emphasis added).

defendants: a Ford F-350, a van and an Isuzu[3] truck. See Deposition of Alexander Nolasco (DE# 78-2 at 3, 20). One of the vehicles, the Isuzu truck, weighed in excess 10,000 pounds. See Reply SOF at ¶ 24. The parties have not proffered any record evidence that the other two vehicles weighed 10,000 pounds or more.

The parties dispute the amount of time the plaintiff spent driving the Isuzu truck. According to the defendants, the plaintiff drove this truck "90-95 %" of the time. Id.; see also Deposition of Alejandro Arrieta (DE# 75-4 at 5) ("Q. Okay. And what vehicle did he -- did he use the van more often than the others for work purposes? A. No. Q. So which vehicle did he use? A. The Isuzu -- "). However, the plaintiff testified that he drove the Isuzu truck 20 percent of the time. See Deposition of Alexander Nolasco (DE# 78-2 at 20) (testifying that "mostly I was driving the van. We could say 60 percent was the van, 20 percent F-350 and the other 20 percent was the truck.").

The plaintiff would sometimes deliver cargo to the airport to be placed on airplanes bound for Europe or South America. See Deposition of Alexander Nolasco (DE# 78-2 at 5). He would also sometimes transport cargo to the seaport. Id. at 10. As part of his job duties, the plaintiff would take the cargo from the defendants' warehouse and place it onto a vehicle for delivery. Id. If the cargo consisted of a small item, the plaintiff would use his hands to load the cargo onto the transportation vehicle. If it was a heavy item, the plaintiff would use a forklift. Id. At all times, the plaintiff would perform this task under the supervision of Alejandro Arrieta. See Sworn Statement of Naibel Garcia (DE# 78-1 at ¶ 14).

---

[3] The plaintiff referred to this truck as a "Suzuki" in his deposition. See Deposition of Alexander Nolasco (DE# 78-2 at 3).

6

**C.      The Individual Defendants Jemary Jorge and Barbara Verona**

Defendant Jemary Jorge is the president of AKS. <u>See</u> Deposition of Jemary Jorge (DE# 75-2 at 11). Ms. Jorge did not work for any of the corporate defendants during the plaintiff's employment. SOF at ¶ 1.[4] Ms. Jorge had no management or supervisory duties over the plaintiff, no control over the plaintiff's schedule, the plaintiff's rate of pay, or how the plaintiff was compensated. <u>Id.</u> at ¶¶ 5-6. Ms. Jorge has no ownership interest in any of the corporate defendants. <u>Id.</u> at ¶ 3.

Defendant Barbara Verona is the vice-president of AKS. <u>See</u> Deposition of Barbara Verona (DE# 75-3 at 5). Ms. Verona did not work for any of the corporate defendants during the plaintiff's employment. SOF at 8. Ms. Verona does not have an ownership interest in defendant AKS. <u>Id.</u> at ¶ 10. Ms. Verona did not control the day-to-day operations of the corporate defendants. She did not schedule employees, pay employees or direct the activities/duties of any employee. <u>Id.</u> at ¶ 11.

<u>**STANDARD OF REVIEW**</u>

The Court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(a), which states as follows:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).

---

[4] The plaintiff testified that Ms. Jorge "would only give [him his] check and that's it." Deposition of Alexander Nolasco (DE# 78-2 at 12). She did not sign them. <u>Id.</u>

7

The moving party bears the burden of meeting this exacting standard. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). That is, "[t]he moving party bears 'the initial responsibility of informing the . . . [C]ourt of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.'" U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323). In assessing whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir. 1994). "When evaluating cross-motions for summary judgment, the Court analyzes each individual motion on its own merits and thus views the facts on each motion in the light most favorable to the respective nonmovant." Adega v. State Farm Fire & Cas. Ins. Co., No 07-20696, 2009 WL 3387689, at *3 (S.D. Fla. Oct. 16, 2009). Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. Id. If the record presents factual issues, the Court must deny the motion and proceed to trial. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

Despite these presumptions in favor of the non-moving party, the Court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the Court occasioned by an unnecessary trial. Celotex, 477 U.S. at 322-23. Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures. Id. As the Supreme Court noted in Celotex:

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment . . . against the party who fails to make a showing sufficient to
> establish the existence of an element essential to the party's case, and on
> which the party will bear the burden of proof at trial.  In such a situation,
> there can be "no genuine issue as to any material fact," since a complete
> failure of proof concerning an essential element of the non-moving party's
> case necessarily renders all other facts immaterial.

Id. at 322-323.  Thus, the mere existence of a scintilla of evidence in support of the
non-moving party's position is insufficient. There must be evidence on which the jury
could reasonably find for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 251 (1986).

## ANALYSIS

The defendants argue that they are entitled to summary judgment in their favor
because: (1)  defendants Jemary Jorge and Barbara Verona were not the plaintiff's
employers under the FLSA and (2) the MCA exemption bars the plaintiff's FLSA claim.
Motion at 2. The plaintiff only addresses the MCA exemption in his response. The
plaintiff argues that the Court has subject-matter jurisdiction over his FLSA claim, the
defendants waived the MCA exemption by failing to timely assert it and genuine issues
of material fact preclude summary judgment in the defendants' favor on the MCA
exemption. Response at 11.

The Court will address the MCA exemption first.

## A.    The MCA Exemption

The defendants argue that they are entitled to summary judgment under the
MCA exemption. Although the Court did not allow the defendants to amend their
answer to assert the MCA exemption, the defendants argue that they may still assert
the MCA exemption at any time because the MCA exemption is jurisdictional and

therefore cannot be waived. Motion at 8, 11.[5] Alternatively, the defendants argue that, even if the MCA exemption is not jurisdictional, the Court should still reach the merits of whether the MCA exemption applies in this case because "[m]erit-based resolution of actions is the paramount goal of the juridical system." Id. at 12. Thus, before reaching the merits of the defendants' MCA exemption argument, the Court must decide whether the MCA exemption is jurisdictional and, if not, whether the defendants should be permitted to raise this exemption on summary judgment.

**1.      Whether the MCA Exemption is Jurisdictional**

The defendants argue that "[t]he Eleventh Circuit [has held] that the Motor Carrier Exemption was enacted by Congress to keep the jurisdiction of the Secretary of Transportation, and the FLSA, separate and mutually exclusive," therefore "the exemption . . . directly implicates subject matter jurisdiction." Reply at 2. The defendants cite to Spires v. Ben Hill Cty., 980 F.2d 683, 686 (11th Cir. 1993) and Walters v. Am. Coach Lines of Miami, Inc., 575 F.3d 1221, 1226 (11th Cir. 2009) to support their argument that the MCA exemption is jurisdictional. Id. at 4, 5. However, the Eleventh Circuit in Spires and Walters was not explicitly confronted with the question of whether the MCA exemption impinges on the subject-matter jurisdiction of the Court.

In Arbaugh v. Y&H Corp., the Supreme Court addressed the issue of whether the requirement that a Title VII "employer" have fifteen or more employees was

---

[5] Courts also "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006).

jurisdictional or merely an element of the plaintiff's claim. 546 U.S. 500, 503 (2006). The

Supreme Court warned that courts sometimes conflate subject-matter jurisdiction with

the failure to state a claim upon which relief can be granted:

> On the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous. "Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination." 2 J. Moore et al., Moore's Federal Practice § 12.30[1], p. 12–36.1 (3d ed.2005) (hereinafter Moore). Judicial opinions, the Second Circuit incisively observed, "often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim." Da Silva, 229 F.3d, at 361. We have described such unrefined dispositions as "drive-by jurisdictional rulings" that should be accorded "no precedential effect" on the question whether the federal court had authority to adjudicate the claim in suit. Steel Co., 523 U.S., at 91, 118 S.Ct. 1003.

Id. at 511. In concluding that the requirement of fifteen or more employees was not

jurisdictional, the Court announced the following "readily administrable bright line" test:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. See Da Silva, 229 F.3d, at 361 ("Whether a disputed matter concerns jurisdiction or the merits (or occasionally both) is sometimes a close question."). But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

Id. at 515-16 (footnote omitted).

The FLSA's jurisdictional provision states that:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages . . . An action to recover the liability prescribed in the

preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

29 U.S.C. § 216(b).

The FLSA's jurisdictional provision empowers "any Federal or State court of competent jurisdiction" to hear an employee's claim for relief. 29 U.S.C. § 216(b). There is no clear indication in section 216(b) that Congress intended the statutory limitation at issue (the MCA exemption) to be jurisdictional. Rather, Congress placed the MCA exemption, like other exemptions, in a separate section of the statute, 29 U.S.C. § 213. Under the bright line test of Arbaugh, the MCA exemption is not jurisdictional. Other courts that have directly addressed this issue have similarly concluded that the MCA exemption is not jurisdictional. See, e.g., Cruz v. AAA Carting & Rubbish Removal, Inc., 116 F. Supp. 3d 232, 241 (S.D.N.Y. 2015) (applying bright line test of Arbaugh to conclude that the MCA exemption was not jurisdictional); Morgan v. Rig Power, Inc., No. 7:15-CV-73-DAE, 2015 WL 6506953, at *3 (W.D. Tex. Oct. 27, 2015) (citing Arbaugh and stating "[n]othing in § 213 suggests that district courts are deprived of subject matter jurisdiction to hear claims implicating the exemptions provided for under that provision. Whether Plaintiffs are subject to the MCA exemption is therefore not a jurisdictional question, but rather one that goes to the merits of the case, and may be appropriately addressed at the merits stage.").

"Federal courts are courts of limited jurisdiction . . . . possess[ing] only that power authorized by Constitution and statute. . . ." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Congress has authorized the federal district courts to

exercise original jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The FLSA is a federal statute. Therefore, this Court has subject-matter jurisdiction over the plaintiff's FLSA claim.

Having determined that the MCA exemption is not jurisdictional and, like other affirmative defenses, may be waived, the Court will next determine whether the defendants should be permitted to raise the MCA exemption at this stage of the proceedings.

### 2. Whether the Court Should Consider the Merits of the MCA Exemption

The defendants argue that even though the Court denied the defendants' request for leave to amend their answer, the Court should still consider the applicability of the MCA exemption at the summary judgment stage and, if necessary, at trial. See Motion at 12 (arguing that "[t]echnicalities involving pleadings and scheduling orders should not be determinative of actions, the merits should determine the outcomes of actions. Even if the MCA exemption did not determine jurisdiction, it is not too late to argue the issue now, as it is essential to a merit-based determination of the action"). The defendants argue that there is no prejudice to the plaintiff if the Court were to consider the MCA exemption in the instant case because the plaintiff was aware of the defendants' intent to raise this exemption "and discovery conducted by both parties addressed the exemption." Id. at 9. The plaintiff did not address the defendants' claim that the plaintiff suffered no prejudice.

The Court finds Sanders v. M&M Waste, Inc., No. 1:08-CV-3856-CC, 2010 WL 11493294 (N.D. Ga. Sept. 27, 2010) instructive on this issue. In Sanders, as in the instant case, the "Defendant did not assert this affirmative defense in its answer, and

the Court ha[d] already found that Defendant ha[d] not satisfied the good cause standard required to permit amendment. . . ." Id. at *3. Nonetheless, the Court permitted the defendant to raise the MCA exemption on summary judgment, stating:

> The Eleventh Circuit has cautioned courts to "avoid hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of the rule." Hassan v. United States Postal Serv., 842 F.2d 260, 263 (11th Cir. 1988). The purpose of Federal Rule of Civil Procedure 8(c), which requires that affirmative defenses be stated in responsive pleadings, "is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it." Id. at 263 (citation omitted). "[I]f a plaintiff receives notice of an affirmative defense by some means other than pleadings, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice." Grant v. Preferred Research, Inc., 885 F.2d 795, 797 (11th Cir. 1989) (citation and marks omitted). In such a case, "it is not error for the trial court to hear evidence on the issue." Hassan, 842 F.2d at 263. The Court finds that, in this case, Plaintiff has long known of Defendant's intention to assert an affirmative defense based on the Motor Carrier Act. The issue has been fully briefed on summary judgment, and there is no allegation that additional discovery is required. Plaintiff has suffered no prejudice by Defendant's failure to include the exemption in its answer.

Id.

Similarly here, the plaintiff has known of the defendants' intent to assert the MCA exemption for some time. The defendants raised this exemption in their failed motion for leave to amend their answer. See Defendants' Motion to Amend the Answer and Affirmative Defenses to Third Amended Complaint and Demand for Jury Trial Docket Entry 33 (DE# 39 at 1, 8/29/17). The defendants again raised it during a telephonic status conference on December 13, 2017. Motion at 11. And again raised the MCA exemption in the instant motion. Most importantly, the defendants represent to the Court that "discovery heavily emphasized the Motor Carrier Exemption, with both sides, at length, asking questions of deponents to establish whether Mr. Nolasco was an

14

exempt employee." Id. The plaintiff does not dispute this representation. Based on the circumstances of the instant case, the Court finds that there is no prejudice to the plaintiff if the defendants are permitted to raise the MCA exemption at the summary judgment stage.

The lack of prejudice to the plaintiff in the instant case is determinative in the Court's decision to permit the defendants to assert the MCA exemption in their summary judgment motion. The undersigned notes that the instant case is distinguishable from Arias v. Alphine Towing, Inc., No. 10-CV-20434-PCH, 2011 WL 11073004, at *1 (S.D. Fla. Feb. 8, 2011) where "allowing the defendants to amend their answer . . . would [have] severely prejudice the plaintiff" because the plaintiff "was never placed on notice that the defendant would raise the MCA exemption and as such, plaintiff's counsel never conducted discovery on [this] exemption." Id. at *6 (internal quotation marks omitted).

Because the plaintiff has not refuted the defendants' claim of no prejudice, the Court will consider the merits of the MCA exemption on summary judgment.

### 3.    The Merits of the MCA Exemption

Exemptions to the FLSA are narrowly construed against the employer. Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1156 (11th Cir. 2008). Moreover, the employer bears the burden of showing the applicability of an exemption. Rojas v. Garda CL Se., Inc., No. 13-23173-CIV, 2015 WL 5084135, at *3 (S.D. Fla. Aug. 28, 2015).

The MCA exemption is found in Section 213(b)(1) of the FLSA and provides that the FLSA's overtime provision, section 207, does not apply "to any employee with

respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of Section 31502 of Title 49." Alvarado v. I.G.W.T. Delivery Sys., Inc., 410 F.Supp. 2d 1272 (S.D. Fla. 2006). The Eleventh Circuit explained that:

> The Secretary has the power to establish qualifications and maximum hours of service for employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act; and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

Baez v. Wells Fargo Armored Service Corp., 938 F.2d 180, 181-82 (11th Cir. 1991) (citing 29 C.F.R. § 782.2(a)). It is not necessary for the Secretary of Transportation to actually exercise his or her authority because the MCA exemption depends on the existence of the Secretary of Transportation's authority to regulate the maximum hours and qualifications of the employees, not the actual exercise of that authority. Id. at 181 n.2 (citations omitted).

At the outset, the defendants maintain that because the Third Amended Complaint alleged that the defendants were joint employers,[6] the MCA exemption applies to all defendants if it applies to one of the defendants. See Motion at 15. The plaintiff does not address this point and the Court notes that there is case law which supports the defendants' argument. See, e.g., Tidd v. Adecco USA, Inc., No. 07-11214-GAO, 2010 WL 996769, at *2 (D.Mass. Mar.16, 2010) (stating that "the overtime wage

---

[6] See Third Amended Compliant (DE# 27 at ¶ 27, 7/10/17) (alleging that "Defendants were direct employers, joint employers or co-employers for purposes of the FLSA, as the term 'employer' is defined by 29 U.S.C. § 203(d).").

claims against the staffing agency defendants as joint employers [were] foreclosed by the Motor Carrier Act exemption" and that "extending the Motor Carrier Act exemption to joint employers prevents circumvention of the Secretary's regulatory authority."). Because the plaintiff does not challenge the application of this principle, the Court will assume that it applies. Therefore, if the Court determines that at least one defendant meets the requirements of the MCA exemption, the Court will apply this exemption to all of the defendants.

> **a. Whether the Defendants Are Motor Carriers Subject to the Secretary of Transportation's Jurisdiction**

An employer is "subject to the Secretary's jurisdiction" if it "show[s] that it (a) is a motor carrier and (b) transports passengers or property in interstate commerce." Rojas, 2015 WL 5084135, at *3 (citing 29 C.F.R. § 782.2(c)).

The Court finds that the defendants have met the interstate commerce requirement. The undisputed record evidence shows that the defendants transported cargo from their warehouse to the airport bound for South America and Europe. See Deposition of Alexander Nolasco (DE# 78-2 at 5, 10). Although there is no record evidence that any of the defendants' drivers traveled outside the state of Florida, the defendants nonetheless meet the interstate commerce requirement. "It is unnecessary for an employee to engage in interstate travel as long as the property being transported is bound for an interstate destination." Hernandez v. Brink's, Inc., No. 08-20717-CIV, 2009 WL 113406, at *3 (S.D. Fla. Jan. 15, 2009); see also Baez, 938 F.2d at 182 (finding that the MCA exemption applied to drivers and driver's helpers whose routes were within the state of Florida, but were transporting checks bound for banks outside

17

of Florida). Accordingly, the defendants have shown that they engaged in interstate commerce.

The defendants must also show that at least one of the corporate defendants meets the definition of "motor carrier" under the Motor Carrier Act. The defendants argue that they meet the "motor carrier" requirement because defendant AKS "has Motor Carrier, and DOT, Numbers, issued to it under the authority of the Department of Transportation." SOF at ¶ 17. The defendants further state that "DLI's trucks are registered with the Department of Transportation." Id. at ¶ 16. The defendants argue that "[h]olding these authorizations from the Secretary of Transportation is enough that both DLI, and AKS, are considered motor carriers for the purposes of the exemption." Motion at 14. The plaintiff does not expressly address this argument in his response other than to state that the "Defendants [have] fail[ed] to present evidence establishing the weight or capacity of the trucks allegedly driven by Plaintiff." Response at 6. However, in their reply, the defendants cite to record evidence that one of the vehicles driven by the plaintiff, an Isuzu truck, weighed in excess of 10,000 pounds. See Reply SOF at ¶ 24.[7]

"Evidence that a carrier has a permit or license from the Department of Transportation is sufficient to prove [the Secretary of Transportation's] jurisdiction." Vidinliev v. Carey Int'l, Inc., 581 F. Supp. 2d 1281, 1292 (N.D. Ga. 2008). In Bule v. Garda CL Se., Inc., No. 14-21898-CIV, 2014 WL 3667815, at *3 (S.D. Fla. July 17,

---

[7] The parties dispute the amount of time the plaintiff spent driving the Isuzu truck. The defendants assert that the plaintiff drove the Isuzu truck 90 to 95 percent of the time. Id. However, the plaintiff testified that he drove the Isuzu truck only 20 percent of the time. See Deposition of Alexander Nolasco (DE# 78-2 at 20).

18

2014), this Court found that the defendant was a motor carrier covered by the Motor Carrier Act where it was "uncontested that [the defendant was] a registered contract carrier with the Department of Transportation . . . ." This Court cited to Baez, 938 F.2d at 182 which stated that "the permit issued by the [Interstate Commerce Commission] indicate[d] that jurisdiction ha[d] already been exercised." Here, the defendants have presented evidence that defendant AKS "has Motor Carrier, and DOT, Numbers, issued to it under the authority of the Department of Transportation" and that defendant "DLI's trucks are registered with the Department of Transportation." SOF at ¶¶ 16-17. Accordingly, the undersigned similarly concludes that the defendants have shown they are a motor carrier under the Motor Carrier Act.

In sum, the defendants have met the first prong of the MCA exemption. See Arranda v. Sw. Transp., Inc., No. 11-21222-CIV, 2012 WL 882635, at *5 (S.D. Fla. Mar. 15, 2012) (finding that "[t]he defendant [was] a motor carrier because it [was] in the business of using trucks to carry property on public highways and the defendant is engaged in interstate commerce.")

### b.   Whether the Plaintiff Engaged in Activity Directly Affecting the Safety of Operation of Motor Vehicles in Interstate Commerce

"To satisfy the second prong of the MCA exemption, Plaintiff must have (a) engaged in activities affecting the safety of operation of motor vehicles (b) while transporting passengers or property in interstate commerce." Garcia v. JIA Logistics, Inc., No. 16-22870-CIV, 2017 WL 2346149, at *4 (S.D. Fla. May 30, 2017) (citing 29 C.F.R. § 782.2). The defendants argue that this prong "is easily established because Plaintiff testifie[d] he spent 50% of his time driving, and that he drove articles originating

from, and destined for, various foreign countries and states." Motion at 16.[8]

The plaintiff does not directly dispute that he transported property in interstate commerce. In fact, the plaintiff testified during his deposition that he would sometimes deliver cargo to the airport to be placed on airplanes bound for Europe or South America. See Deposition of Alexander Nolasco (DE# 78-2 at 5).

The defendants also maintain that the plaintiff's work as a driver affected the safety of operation of motor vehicles. See Motion at 16. The plaintiff incorrectly claims that "Defendants' **only** contention on this issue is that Plaintiff was an alleged 'loader,' and therefore subject to the exemption" and further argues that a genuine issue of fact exists concerning whether the work the plaintiff performed as a warehouse assistant loading cargo onto vehicles affected the safety of vehicles traveling on highways. Response at 8 (emphasis added), id. at 11 (stating that "Nolasco's job duties did not include responsibilities for discretion and planning of a load.").[9] In their reply, the defendants maintain that the issue of whether the plaintiff also worked for the defendants as a loader "is not relevant because [the plaintiff] fits the [MCA] exemption

---

[8] The plaintiff suggests he spent less than fifty percent of his time driving because he spent "50% [of his time] 'on the street packing things **and doing deliveries**.'" Therefore, he did not drive goods for 50% of his time." RSOF at ¶ 14. However, the plaintiff has not presented the Court with any case law establishing that the amount of time he spent on non-driving activities incidental to making deliveries ("on the street packing things") should not be counted as part of the duties of a delivery driver. In any event, the Court finds that whether the plaintiff spent 50 percent of the time or less than 50 percent of the time driving is not determinative in the instant case.

[9] A "loader" engages "in work directly affecting 'safety of operation' so long as he has responsibility when . . . motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized." 29 C.F.R. § 782.5(a).

as a driver." Reply at 8; <u>see</u> <u>also</u>, <u>id.</u> at 9 (stating that "[t]here is a material issue as to whether Plaintiff was a loader, which may be the case, but does not matter because Plaintiff was exempt as a driver.").

It is beyond dispute that a driver affects the safety of operation of motor vehicles. <u>See</u>, <u>e.g.</u>, <u>Alvarado v. I.G.W.T. Delivery Sys., Inc.</u>, 410 F. Supp. 2d 1272, 1277 (S.D. Fla. 2006) (granting summary judgment for the defendants on the MCA exemption and stating that "there is little question that as . . . delivery truck drivers, Plaintiffs' activities directly affected the safety of operation of motor vehicles in interstate commerce."). However, the plaintiff drove both commercial and non-commerical motor vehicles. The defendants have presented record evidence of the weight of only one vehicle, the Isuzu truck, which weighed in excess of 10,000 pounds. <u>See</u> Reply SOF at ¶ 24. The plaintiff also drove a Ford F-350 and a van. The defendants have not presented any record evidence concerning these other two vehicles and at least with respect to the van, the plaintiff did not believe it could weigh in excess of 10,000 pounds.[10] Thus, the defendants have presented record evidence that only one of the vehicles driven by the plaintiff was a commercial motor vehicle.

The parties also dispute the amount of time the plaintiff spent driving the Isuzu truck. According to the defendants, the plaintiff drove this truck "90-95 %" of the time.

---

[10] When asked about the weight of the van, the plaintiff testified as follows:

 Q. Okay, and the Ford Transit Connect, is that also above 10,000 pounds to your knowledge?

 A. No. I don't believe a van could weigh 10,000 pounds.

Deposition of Alexander Nolasco (DE# 75-1 at 9).

Id. However, the plaintiff testified during his deposition that he drove the Isuzu truck 20 percent of the time. See Deposition of Alexander Nolasco (DE# 78-2 at 20) (testifying that "mostly I was driving the van. We could say 60 percent was the van, 20 percent F-350 and the other 20 percent was the truck."). However, this factual dispute is not material because even assuming, as the plaintiff contends, that 20 percent of the time the plaintiff spent making deliveries, he used the Isuzu truck, the plaintiff's activities still affected the safety of operation of motor vehicles under the MCA.

In Hernandez v. Brink's, Inc., No. 08-20717-CIV, 2009 WL 113406, at *6 (S.D. Fla. Jan. 15, 2009), this Court found that plaintiffs who worked on both commercial and non-commercial vehicles affected the safety of operations on commercial motor vehicles. The Court noted that:

> [n]one of Plaintiffs' job duties involved primarily non-commercial vehicles to an extent that would render the effect of their duties on the safety of operation of commercial motor vehicles de minimus. Each Plaintiff worked on both commercial and non-commercial vehicles and their duties therefore sufficiently impacted the safety of operations of commercial motor vehicles to bring them within the scope of the FLSA's motor carrier exemption.

Id. The Court reasoned that:

> Reverting to the principle derived from regulations governing mixed duties, **when mixed activities occur, the Motor Carrier Act favors coverage of the employee during the course of employment. Applying this principle to duties on a mixed fleet, as long as an employee's duties affect the safety of operation of vehicles covered by the Motor Carrier Act, the employee is covered by the motor carrier exemption "regardless of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek, and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting 'safety of operation.'** " 29 C.F.R. § 782.2(b)(3). Conversely, if an employee's principal duties involve tasks related to non-commercial vehicles, and only sporadically assists with duties involving commercial

> vehicles, such duties would likely have "no substantial direct effect on such safety of operation" and would be so "trivial, casual, and insignificant as to be de minimus."

Id. (emphasis added).

Here, the plaintiff drove the Isuzu truck, a commercial vehicle, at least 20 percent of the time he was making deliveries. Since the plaintiff spent approximately fifty percent of the time making deliveries, the plaintiff was regularly driving a commercial vehicle approximately 10 percent of the total time he was at work. This is enough to meet the more than de minimus threshold. Thus, the plaintiff engaged in activity directly affecting the safety of operation of motor vehicles in interstate commerce.

Accordingly the defendants have shown that the MCA exemption applies in the instant case.

### 4.    The Technical Corrections Act

Although the Court finds that the MCA exemption applies, the SAFETEA-LU Technical Corrections Act of 2008 (hereinafter "TCA" or "Technical Corrections Act") may still extend the application of the FLSA to the plaintiff. "[T]he test to qualify as a 'covered employee' [under the TCA] is conjunctive: the employee's responsibilities must at least, in part, involve the operation of a vehicle that both weighs less than 10,001 pounds and fits less than nine passengers (including the driver)." Bedoya v. Aventura Limousine & Transp. Serv., Inc., No. 11-24432-CIV, 2012 WL 3962935, at *5 (S.D. Fla. Sept. 11, 2012) (citing Technical Corrections Act § 306(c)).

Neither party has briefed the application of the TCA to the instant case. Accordingly, on or before **Friday, May 25, 2018** at **noon**, the plaintiff shall file a notice indicating that the TCA does not apply to the instant case or file a memorandum of law

addressing why the plaintiff is a covered employee under the TCA. The defendants shall file a response no later than **Wednesday, May 30, 2018** at **noon**. The parties shall be prepared to present oral argument on the TCA at the final pre-trial conference set before the undersigned on **Thursday, May 31, 2018** at **10:00 AM**.

A.     **FLSA Employer**

The defendants seek summary judgment on behalf of defendants Jemary Jorge and Barbara Verona on the ground that Ms. Jorge and Ms. Verona were not employers under the FLSA. The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d). It is well settled that being a corporate officer is insufficient to confer employer status under the FLSA. Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1160 (11th Cir. 2008) (citing Patel v. Wargo, 803 F.2d 632, 637-38 (11th Cir. 1986)). "[I]n order to qualify as an employer for this purpose, an officer 'must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.'" Id. (quoting Patel, 803 F.2d at 638).

 The plaintiff did not address this argument in his response to the summary judgment motion. Nonetheless, summary judgment motions should not be granted by default. See United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004)). "At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment" and "ensure that the motion itself is supported by [the] evidentiary materials." Id. Accordingly, this Court will review the materials submitted by the defendants and decide this issue on the merits.

24

Here, the defendants have cited to record evidence that defendants Jemary Jorge and Barabara Verona were not involved in the day-to-day operations of the corporate defendants and did not have supervisory control over the plaintiff. See SOF at ¶¶ 1-12. In fact, Ms. Jorge and Ms. Verona did not work for any of the corporate defendants during the time the plaintiff was employed by the defendants. Id. at ¶¶ 1, 8. Moreover, defendants Jemary Jorge and Barabara Verona had no say over the plaintiff's schedule, the plaintiff's rate of pay, or how the plaintiff was compensated. Id. at ¶¶ 5-6, 11. The plaintiff has not pointed to any conflicting record evidence creating a genuine issue of material fact. Accordingly, defendants Jemary Jorge and Barabara Verona were not the plaintiff's employers under the FLSA and the defendants are entitled to summary judgment on this ground as a matter of law.

## CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED that the Defendants' Motion for Summary Judgment (DE# 74, 2/15/18) is **GRANTED in part and DENIED in part**. Defendants Jemary Jorge and Barabara Verona are not employers under the FLSA and the plaintiff's claims against Jemary Jorge and Barabara Verona are hereby **DISMISSED**. It is further

ORDERED AND ADJUDGED that on or before **Friday, May 25, 2018** at **noon**, the plaintiff shall file a notice indicating that the TCA does not apply to the instant case or file a memorandum of law addressing why the plaintiff is a covered employee under

the TCA.[11] The defendants shall file a response no later than **Wednesday, May 30, 2018 at noon**. The parties shall be prepared to present oral argument on the TCA at the final pre-trial conference set before the undersigned on **Thursday, May 31, 2018** at **10:00 AM**.

DONE AND ORDERED in Chambers at Miami, Florida, this **22nd** day of May, 2018.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided:
All counsel on record

---

[11] The plaintiff's failure to timely brief this matter will result a judgment being entered in favor of the defendants.